**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

SAMUEL YEMANE-BARIE,

                    Petitioner,

    vs.

JOHN MATTOS, *et al.*,[1]

                  Respondents.

Case No.: 2:26-cv-00760-GMN-BNW

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Pending before the Court is Petitioner Samuel Yemane-Barie's Amended Petition for Habeas Corpus Relief under 28 U.S.C. § 2241, (ECF No. 8).  Federal Respondents Kristi Noem, Pamela Bondi, and Markwayne Mullin filed a Response,[2] (ECF No. 10).[3]  Petitioner did not reply and instead filed a Notice of Class Membership and Request for Immediate Release, (ECF No. 12).

## I.    BACKGROUND

Petitioner is a citizen of Eritrea. (Am. Pet. 2:2, ECF No. 8).  In 2003, he was exiled from Eritrea as a child with his parents to Malta. (*Id.* 2:2–3).  He lived in Malta for 10 years prior to entering the United States in 2023. (*Id.* 2:3–4).  In March 2023, United States Border Patrol encountered and arrested Petitioner. (Pet'r's Docs. at 2, Ex. 1 to Fed. Resp., ECF No. 10-1).  United States Border Patrol issued Petitioner a Notice to Appear and released him from custody a few days later on an Order of Release on Recognizance. (*Id.*).  On July 2, 2025, an

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Secretary of Homeland Security Markwayne Mullin is substituted for the currently named Kristi Noem, and Acting U.S. Attorney General Todd Blanche is substituted for the currently named Pamela Bondi.

[2] Federal Respondents' Response incorrectly identifies Petitioner as Niebla Perez Amaurys. (Fed. Resp. 1:17, ECF No. 10).  However, the attached exhibits reference Petitioner Samuel Yemane-Barie.  Thus, the Court construes the Response as pertaining to Petitioner Yemane-Barie, despite the typographical error.

[3] Respondent John Mattos filed a separate Response, (ECF No. 11), indicating that he has no independent authority to release Petitioner, and thus takes no position on the relief sought.

immigration judge ("IJ") granted Petitioner withholding of removal to Eritrea and ordered him removed in the alternative to Malta. (*Id.* at 2, 7–21). Both parties reserved appeal rights, but neither party appealed. (*Id.*). Petitioner was taken into ICE custody on October 2, 2025. (Am Pet. 2:5–6). When Petitioner spoke to someone at the Eritrea and Malta consulate, he was told there are no records that tie him to either country, therefore travel documents would not be issued. (*Id.* 2:7–10). He also attempted to be released to Malta as a third-party country, but according to Petitioner, Malta refused to accept him. (*Id.* 2:10–12). Petitioner has remained in ICE custody since he was detained in October. With this Petition, he now challenges the constitutionality of his prolonged detention and seeks immediate release. (*See generally id.*).

## II.    LEGAL STANDARD

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). A district court's habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

## III.    DISCUSSION

Petitioner argues that he is entitled to habeas relief on five grounds: (1) Petitioner's continued indefinite detention violates his Fifth Amendment right to due process because his removal is not reasonably foreseeable; (2) Petitioner's continued detention violates the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1231(a)(6); (3) ICE's failure to comply with its own regulations concerning the re-detention of individuals on orders of supervision

violates Petitioner's Fifth Amendment due process rights and the Administrative Procedures Act ("APA"); (4) ICE's policy to remove noncitizens to a third country with no notice or opportunity to seek fear-based protection violates Petitioner's Fifth Amendment right to due process and constitutes arbitrary and capricious agency action in violation of the APA; and (5) Petitioner's detention in immigration custody pursuant to recent ICE policy regarding third country removal violates the Due Process Clause of the Fifth Amendment. (*See generally* Am. Pet.).

After the Amended Petition was filed, the parties notified the Court that they believe Petitioner is a member of the certified class in *Jacobo Ramirez v. Mullin, et al.*, No. 25-cv-02136-RFB-MDC (D. Nev.). (*See generally* Fed. Resp., ECF No. 10); (*see generally* Not. Class Membership); *see also Jacobo Ramirez v. Mullin, et al.*, No. 2:25-CV-02136-RFB-MDC, 2026 WL 879799 (D. Nev. Mar. 30, 2026). Upon review of the record, however, the Court finds that Petitioner here is not a member of the *Jacobo Ramirez* class because he has a final order of removal and is detained pursuant to 8 U.S.C. § 1231.[4] Because he is not a class member, the Court will not enforce the class judgment, and instead addresses each of the grounds for relief raised by Petitioner in his Amended Petition.

**A. *Zadvydas* Claim (Ground 1)**

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. The Supreme Court has held that "the Due Process Clause

---

[4] The *Jacobo Ramirez* certified class includes the following people:
> All noncitizens in the U.S. without lawful status (1) who are or will be arrested or detained by ICE; (2) who are or will be in removal proceedings before an Immigration Court within the District Nevada; (3) whom DHS alleges or will allege to have entered the United States without inspection or parole; (4) who are not or will not be subject to detention under 8 U.S.C. §§ 1226(c), 1225(b)(1), or 1231 at the time they are scheduled for or request a bond hearing; and (5) whose most recent arrest by ICE occurred inside the United States and not while arriving in the United States.

*Jacobo Ramirez*, 2026 WL 879799, at *4.

protects [a noncitizen] subject to a final order of deportation." *Zadvydas*, 533 U.S. at 693–94. In *Zadvydas*, the Supreme Court held that the INA does not authorize "indefinite, perhaps permanent, detention" of noncitizens subject to final orders of removal. *Id.* at 699.

The authority of ICE to detain noncitizens under federal law derives from 8 U.S.C § 1231, which directs the Attorney General of the United States to affect the removal of any noncitizen from this country within 90 days of a final order of removal. 8 U. S. C. § 1231(a)(1). The removal period begins on the latest of three dates: (1) the date the order of removal becomes "administratively final," (2) the date of the final order of any court that entered a stay of removal, or (3) the date on which the [noncitizen] is released from non-immigration detention or confinement. 8 U.S.C. § 1231(a)(1)(B).  During the removal period, detention is mandatory. 8 U.S.C. § 1231(a)(2).  Under § 1231, the removal period may be extended beyond 90 days for a variety of reasons including a determination by DHS that "removal is not practicable or proper." *Id.*

Because "[a] statute permitting indefinite detention . . . would raise a serious constitutional problem," the Supreme Court has "read an implicit limitation" into the statute and has held that a noncitizen may only be detained for "a period reasonably necessary" to effectuate their removal. *Zadvydas*, 533 U.S. at 689, 690.  When a removable noncitizen is detained beyond this reasonable time and "removal is not reasonably foreseeable, the court should hold continued detention unreasonable." *Id.* at 699.  The Supreme Court adopted a six-month period of presumptive reasonableness after the removal order is final and confirmed that "[a noncitizen] may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701.  The Court further determined that "after this 6–month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* at 701.  If the

Government fails to meet its burden, then the noncitizen must be released from detention. *See Jennings v. Rodriguez*, 583 U.S. 281, 299 (2018).

### 1.  Length of Detention

On July 2, 2025, an IJ granted Petitioner withholding of removal to Eritrea and ordered him removed in the alternative to Malta. (Pet'r's Docs. at 2, 7–21, Ex. 1 to Fed. Resp.). According to Petitioner's Executive Office for Immigration Review ("EOIR") data, neither party appealed Petitioner's order of removal.  Petitioner therefore has a final order of removal under 8 U.S.C. § 1231(a)(1)(B).  Moreover, Petitioner has been detained since October 2, 2025. (Am. Pet. 2:5–6).  Petitioner's detention therefore exceeds not only the 90-day removal period, but also the six month presumptively reasonable period articulated in *Zadvydas*.  Therefore, if Petitioner demonstrates that there is no significant likelihood of removal in the reasonably foreseeable future, and Respondents do not rebut that showing, the Court must order his release. *See Zadvydas*, 533 U.S. at 699–700.

### 2.  Significant of Likelihood of Removal

Petitioner demonstrates there is no significant likelihood of removal in the reasonably foreseeable future and Respondents fail to respond with evidence sufficient to rebut that showing.  To begin, Petitioner cannot be removed to Eritrea because the IJ granted Petitioner withholding of removal to Eritrea. (Pet'r's Docs. at 2, 7–21, Ex. 1 to Fed. Resp.).  Petitioner does have a final order of removal to Malta. (*Id.* at 2).  But he alleges that he recently spoke to someone at the Malta consulate who informed him that they would not issue travel documents for him because they had no records tying him to the country. (Am. Pet. 2:7–10).  He further states that he attempted to be released to Malta as a third-party country in late 2025, and Malta refused to accept him. (*Id.* 2:10–12).  These allegations provide "good reason to believe that there is no significant likelihood of removal" to Malta in the reasonably foreseeable future. *See Bunnell v. Noem*, No. 2:25-CV-02259-GMN-EJY, 2025 WL 3707588, at *3–4 (D. Nev. Dec.

22, 2025) (finding that the petitioner had met his initial burden where he alleged that the consulate informed him that they would not issue travel documents because of a lack of records connecting the petitioner to the country).  Petitioner also asserts that no specific plans have been made to deport him, and no other third country designation has been made.  These facts are sufficient to satisfy Petitioner's initial burden.

Respondents wholly fail to respond to Petitioner's arguments regarding the reasonable foreseeability of his removal.  They therefore fail to rebut the showing that there is no significant likelihood of removal in the reasonably foreseeable future.

In sum, Petitioner demonstrates there is no significant likelihood of removal in the reasonably foreseeable future and Respondents fail to respond with any argument to rebut this showing.  The Court therefore finds Petitioner's continuing detention violates the Due Process Clause of the Fifth Amendment.[5]

### 3. Relief

Petitioner requests that he be released immediately. (Am. Pet. 17:21).  The remedy for a *Zadvydas* claim is generally release of the habeas petitioner under conditions of supervision.  *Zadvydas* explains that "if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." 533 U.S. at 699–700.  It further provides that the noncitizen's "release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the [noncitizen] may no doubt be returned to custody upon a violation of those conditions." *Id.* at 700.  Moreover, when a court considers a due process claim, it may tailor relief to the specific problem that gives rise to the due process violation. *Morrissey v. Brewer*, 408 U.S. 471, 481

---

[5] Because the Court finds Petitioner is entitled to his sought-after relief, immediate release, on his claim that his continued detention violates his due process rights, the Court need not reach his argument that his continued detention violates the INA (Ground 2), nor that he was wrongfully re-detained (Ground 3).  The Court need not reach Ground 5 of the Amended Petition as well.

(1972).  Because the Court holds that Petitioner's continued detention violates the Fifth Amendment based on the analytical framework provided in *Zadvydas*, the Court finds that Petitioner's release, under reasonable terms of supervision as set for in 8 U.S.C. § 1231(a)(3) and 8 C.F.R. § 241.5(a), is warranted. *See Zadvydas*, 533 U.S. at 699–700.   Respondents are prohibited from imposing release conditions that substantially interfere with Petitioner's liberty, such as location monitoring, without having established the reasonableness of those restrictions, by clear and convincing evidence, at a pre-deprivation hearing.

## B.  Third Country Removal Policy (Ground 4)

Petitioner contends that ICE's policy of removing noncitizens to a third country with no notice or opportunity to seek fear-based protection violates his due process rights and constitutes arbitrary and capricious agency action in violation of the APA. (Am. Pet. 15:18–21). Respondents again do not respond to this ground for relief.

As the Court has previously found in *Cavieres Gomez v. Mattos*, No. 2:25-cv-00975-GMN-BNW, 2025 WL 3101994 at *6–7 (D. Nev. Nov. 6, 2025), Petitioner has a due process right to receive meaningful notice and opportunity to present a fear-based claim to an immigration judge before DHS deports him to a third country.  "Immigration proceedings must provide the procedural due process protections guaranteed by the Fifth Amendment." *Vilchez v. Holder*, 682 F.3d 1195, 1199 (9th Cir. 2012) (citing *Lacsina Pangilinan v. Holder*, 568 F.3d 708, 709 (9th Cir. 2009)).  "A 'noncitizen must be given sufficient notice of a country of deportation that, given his capacities and circumstances, he would have a reasonable opportunity to raise and pursue his claim for withholding of deportation.'" *Nguyen v. Scott*, 796 F. Supp. 3d 703, 727 (W.D. Wash. 2025) (quoting *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1009 (W.D. Wash. 2019) (citing *Mathews v. Eldridge*, 424 U.S. 319, 349 (1976)).  "[I]ndividuals whose rights are being determined are entitled to notice of the issues to be adjudicated, so that they will have the opportunity to prepare and present relevant arguments and evidence."

*Andriasian v. I.N.S.*, 180 F.3d 1033, 1041 (9th Cir. 1999).  "In the context of country of removal designations, last minute orders of removal to a country may violate due process if an immigrant was not provided an opportunity to address his fear of persecution in that country." *Najjar v. Lynch*, 630 F. App'x 724, 725 (9th Cir. 2016) (non-precedential memorandum disposition).  Thus, in accordance with the ample case law above, Petitioner has a due process right to receive meaningful notice and opportunity to present a fear-based claim to an immigration judge before DHS deports him to a third country.[6]

Because Respondents do not contest Petitioner's allegations that he may be deported to a third country without an opportunity to contest it, the Court grants this ground for relief.  As such, the Court prohibits Respondents from removing Petitioner to a third country without providing him and his counsel with adequate notice of intent to seek removal to a third country and due process in the form of an opportunity to seek to reopen Petitioner's immigration court proceedings to seek fear-based relief from removal. (*See* Am. Pet. 17:24–18:2 (requesting this form of relief)).

## IV.    <u>CONCLUSION</u>

**IT IS HEREBY ORDRED** that Petitioner's Amended Petition for Habeas Corpus Relief under 28 U.S.C. § 2241, (ECF No. 8), is **GRANTED**.

**IT IS FURTHER ORDERED** that Respondents must release Petitioner from detention under reasonable terms of supervision as set for in 8 U.S.C. § 1231(a)(3) and 8 C.F.R. § 241.5(a), no later than 4:00 p.m. on April 23, 2026.  Respondents are prohibited from imposing release conditions that substantially interfere with Petitioner's liberty, such as location monitoring, without having established the reasonableness of those restrictions, by clear and convincing evidence, at a pre-deprivation hearing.

---

[6] Because the Court finds that Petitioner puts forth a successful argument under the Fifth Amendment right to due process, it need not determine whether the stated policy violates the APA.

**IT IS FURTHER ORDERED** that Respondents are enjoined from re-detaining Petitioner without first complying with the requirements for revocation of release as provided for in 8 C.F.R. § 241.13(i).

**IT IS FURTHER ORDERED** that the parties must file a Joint Status Report on the docket no later than April 24, 2026, to certify compliance with the Court's Order.

**IT IS FURTHER ORDERED** that pursuant to Federal Rule of Civil Procedure 25(d), Secretary of Homeland Security Markwayne Mullin is substituted for the currently named Kristi Noem, and Acting U.S. Attorney General Todd Blanche is substituted for the currently named Pamela Bondi.  The Clerk of Court is kindly directed to update the docket to reflect these substitutions.

Counsel for Respondents are directed to immediately provide notice of this Order to the parties they represent.  The Clerk of Court is kindly directed to send a copy of this Order to the Warden of Nevada Southern Detention Center in Pahrump, Nevada.

**DATED** this __22__ day of April, 2026.

_____

Gloria M. Navarro, District Judge
United States District Court